# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

CODY T. KNAPP
Federal Programs Branch, Civil Division
U.S. Department of Justice
1100 L Street NW
Washington, DC 20005
Tel.:  (202) 532-5663
E-mail:  cody.t.knapp@usdoj.gov
*Counsel for Defendants*

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, <br><br> *Plaintiff,* <br><br> vs. <br><br> DAN BROUILLETTE, in his official capacity as Secretary of Energy; UNITED STATES DEPARTMENT OF ENERGY, <br><br> *Defendants.* | Case No. 4:20-cv-98-BMM <br><br><br> **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |

## **TABLE OF CONTENTS**

INTRODUCTION ..............................................................................................1

LEGAL BACKGROUND ..................................................................................4

    I.      The Federal Advisory Committee Act.............................................4

    II.     The Administrative Procedure Act ................................................6

FACTUAL BACKGROUND ...............................................................................7

    I.      The National Coal Council..............................................................7

        A.  The Council........................................................................7

        B.  Council Subcommittees .....................................................9

    II.     The NCC, Inc.................................................................................10

    III.   This Action.....................................................................................11

        A.  Pre-Suit Correspondence .................................................11

        B.  Plaintiff's Claims.............................................................12

STANDARDS OF REVIEW ..............................................................................14

    I.      Rule 12(b)(1) .................................................................................14

    II.     Rule 12(b)(6) .................................................................................14

ARGUMENT....................................................................................................16

    I.      This Court Lacks Jurisdiction To Grant Relief as to the Full
Council..........................................................................................17

    II.     Plaintiff Fails To State a Claim as to the Council's
Subcommittees. .............................................................................25

    III.   Plaintiff Fails To State a Claim as to NCC, Inc............................29

CONCLUSION .................................................................................................35

CERTIFICATE OF COMPLIANCE.....................................................................36

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aluminum Co. of America v. National Marine Fisheries Service*,
    92 F.3d 902 (9th Cir. 1996)................................................................... 30, 33

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 14, 15

*Cook v. Brewer*,
    637 F.3d 1002 (9th Cir. 2011)...................................................................14

*Center for Policy Analysis on Trade & Health (CPATH) v. Office of the U.S. Trade
    Representative*, 540 F.3d 940 (9th Cir. 2008)...........................................16

*Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019)......................................................................23

*Davis v. Federal Election Commission*,
    554 U.S. 724 (2008) ..................................................................................18

*Electronic Privacy Information Center v. Drone Advisory Committee*,
    369 F. Supp. 3d 27 (D.D.C. 2019) ...............................................................6

*Electronic Privacy Information Center v. Presidential Advisory Commission on
    Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) ............................................................ 19, 20

*Food Chemical News v. Young*,
    900 F.2d 328 (D.C. Cir. 1990) ...................................................................30

*Food Marketing Institute v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) ...............................................................................32

*Heckler v. Chaney*,
    470 U.S. 821 (1985) .....................................................................................6

*Hein v. Freedom From Religion Foundation, Inc.,*
    551 U.S. 587 (2007) ....................................................................17

*Idaho Wool Growers Assoc. v. Schafer,*
    637 F. Supp. 2d 868 (D. Idaho 2009) ..........................................6

*In re Darvocet, Darvon, & Propoxyphene Products Liability Litigation,*
    756 F.3d 917 (6th Cir. 2014)......................................................24

*In re National Football League's Sunday Ticket Antitrust Litigation,*
    933 F.3d 1136 (9th Cir. 2019)............................................. 15, 28

*Kokkonen v. Guardian Life Insurance Co. of America,*
    511 U.S. 375 (1994) ...................................................................14

*Logan v. U.S. Bank National Ass'n,*
    722 F.3d 1163 (9th Cir. 2013)............................................. 17, 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................. 20, 21

*Manshardt v. Federal Judicial Qualifications Committee,*
    408 F.3d 1154 (9th Cir. 2005)....................................................30

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
    540 F.3d 1049 (9th Cir. 2008)....................................................15

*National Anti-Hunger Coalition v. Executive Committee of the President's Private
    Sector Survey on Cost Control,*
    557 F. Supp. 524 (D.D.C.) ................................................... 26, 27

*Niskanen Center, Inc. v. U.S. Department of Energy,*
    328 F. Supp. 3d 1 (D.D.C. 2018) ...............................................32

*Public Citizen v. U.S. Department of Justice,*
    491 U.S. 440 (1989) ..................................................... 20, 21, 25, 30

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004)....................................................14

*Solis v. City of Fresno,*
    No. 1:11-CV-00053 AWI, 2012 WL 868681 (E.D. Cal. Mar. 13, 2012)...24

*Spokeo, Inc. v. Robins,*
　　136 S. Ct. 1540 (2016) ................................................................ 17, 18

*Town of Chester v. Laroe Estates, Inc.,*
　　137 S. Ct. 1645 (2017) ......................................................................18

*Western Organization of Resource Councils v. Bernhardt,*
　　362 F. Supp. 3d 900 (D. Mont. 2019).............................................16

*Western Organization of Resource Councils v. Bernhardt,*
　　412 F. Supp. 3d 1227 (D. Mont. 2019).............................................26

**STATUTES**

5 U.S.C. § 552.................................................................................................32

5 U.S.C. § 702....................................................................................................6

5 U.S.C. § 704.................................................................................................6, 7

5 U.S.C. § 706....................................................................................................7

5 U.S.C. App. II § 2 ........................................................................ 1, 4, 5, 20

5 U.S.C. App. II § 3 ............................................................................. 29, 34

5 U.S.C. App. II § 5 ........................................................................................16

5 U.S.C. App. II § 7 ........................................................................................26

5 U.S.C. App. II § 8 ........................................................................................19

5 U.S.C. App. II § 9 ..........................................................................................5

5 U.S.C. App. II § 10 ....................................................... 1, 5, 6, 16, 18, 21

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ..........................................14

Federal Rule of Civil Procedure Rule 12(b)(6) .............................. 14, 15, 25, 34

**REGULATIONS**

41 C.F.R. § 102-3.35.......................................................................................26

41 C.F.R. § 102-3.40.......................................................................................30

41 C.F.R. § 102-3.145.....................................................................................27

41 C.F.R. § 102-3.160.................................................................26

49 Fed. Reg. 44,231 (Nov. 5, 1984).............................................7

82 Fed. Reg. 15,345 (Mar. 28, 2017) ........................................22

82 Fed. Reg. 42,663 (Sept. 11, 2017) ........................................22

83 Fed. Reg. 12,180 (Mar. 20, 2018) ........................................22

83 Fed. Reg. 47,144 (Sept. 18, 2018)............................... 8, 9, 22

84 Fed. Reg. 10,053 (Mar. 19, 2019) ........................................22

84 Fed. Reg. 15,610 (Apr. 16, 2019) .........................................22

84 Fed. Reg. 65,144 (Nov. 26, 2019) ..........................................7

85 Fed. Reg. 36,395 (June 16, 2020) .........................................22

**OTHER AUTHORITIES**

The Nat'l Coal Council, Membership Roster 2020 (last revised Sept. 25, 2020), https://www.nationalcoalcouncil.org/Members/2020-Membership-Roster.pdf ................................................................8

Dep't of Energy, NCC Executive Committee 2020 (visited Dec. 20, 2020), https://ncc.energy.gov/ncc/executive-committee-2020 ..........................8

Dep't of Energy, Past Meetings and Events (visited Dec. 20, 2020), https://ncc.energy.gov/ncc/past-meetings-and-events...........................9

Dep't of Energy, Studies of the National Coal Council (visited Dec. 20, 2020), https://ncc.energy.gov/ncc/studies-national-coal-council...........9

Gen. Servs. Admin., 2019 Committee Detail:  National Coal Council (visited Dec. 16, 2020), https://www.facadatabase.gov/FACA/FACAPublicCommittee?id=a10t000000Eq9aVAAR........................................................................9

The Nat'l Coal Council, About the NCC (visited Dec. 16, 2020) https://www.nationalcoalcouncil.org/page-About-Us.html ................10

Nat'l Coal Council, Summary of Meeting (May 15, 2019), https://ncc.energy.gov/ncc/sites/default/files/NCC-

Events/2019/Summer/NCC%20Spring%202019%20Webcast%20Meeti
ng%20Minutes.pdf................................................................................. 23, 24

## EXHIBIT INDEX

**Exhibit**

Dep't of Energy, National Coal Council Advisory Committee

Charter, Nov. 20, 2019....................................................................................1

## INTRODUCTION

The National Coal Council ("the Council") is a federal advisory committee tasked by the Secretary of Energy with providing advice and recommendations on matters relating to the production and consumption of American coal.  As a duly chartered federal advisory committee, the Council is subject to certain government-transparency laws.  The dispute in this case concerns the scope of one of those laws:  The Federal Advisory Committee Act ("FACA" or "the Act").

Importantly for this case, FACA does not apply to any and every entity that provides information to the federal government.  Rather, it only applies to committees *established* or *utilized* by a federal agency for the purpose of obtaining policy advice and recommendations.  *See* 5 U.S.C. App. II § 2.  If a committee is so established or utilized, then, subject to various exceptions, that committee must open its meetings to the public and provide public access to certain documents created by or provided to it.  *See* 5 U.S.C. App. II § 10.

—1—

Since 2017, the relevant time period for this case, the Council has faithfully complied with FACA.  It provides advance notice of its full committee meetings, allows and facilitates public comment at those meetings, and publishes its studies and reports for public consumption.

Despite the Council's record of compliance, Plaintiff brings two claims for relief—an open-meetings count and an open-records count—and asks this Court to order Defendants to ensure that the Council operates consistent with FACA's public-access requirements.  Plaintiff also asks this Court to make public the meetings and records of Council subcommittees, which are typically "study groups" of manageable size formed to develop reports and recommendations for the full Council to consider.  Finally, Plaintiff seeks to pry open the meetings and records, including financial records, of a private, non-profit corporation, The National Coal Council, Incorporated ("NCC, Inc."), that provides administrative support for the Council's operations.

This Court cannot grant the relief Plaintiff seeks.

*First*, Plaintiff lacks standing to pursue its claims for relief as to the meetings and records of the full Council.  Defendants have not denied Plaintiff advance notice or access to Council meetings, and any injury Plaintiff suffered from being unable to obtain meeting minutes and records of Council deliberations has been remedied by their publication on the Council's new website.

*Second*, Plaintiff has not stated a viable claim to access the meetings and records of Council subcommittees.  Because Council subcommittees are, in all respects, subordinate to the full Council, and because the Council fully deliberates as to any subcommittee work-product before transmitting recommendations to the Secretary, subcommittee meetings and records are not subject to FACA's public-disclosure requirements.

*Third*, Plaintiff is not entitled to access the meetings and records of NCC, Inc. under FACA.  NCC, Inc. is a non-governmental, non-profit corporation formed by private individuals to provide administrative support to the Council, is not subject to management by agency officials, and does not

provide advice or recommendations to the Secretary.  Thus, FACA does not

apply to NCC, Inc.

For these reasons, the complaint should be dismissed.

## LEGAL BACKGROUND

### I.       The Federal Advisory Committee Act

In the early 1970s, Congress found there were "numerous committees,

boards, commissions, councils, and similar groups which ha[d] been estab-

lished to advise officers and agencies in the executive branch of the Federal

Government."  5 U.S.C. App. II § 2(a).  These groups, though "frequently a

useful and beneficial means of furnishing expert advice, ideas, and diverse

opinions to the Federal Government," *id.*, had proliferated in form, number,

and cost.  To establish uniform standards for the creation, operation, and

duration of such advisory groups and to reduce the growing burdens asso-

ciated with them, Congress enacted FACA.  *Id.* § 2(b).

FACA imposes various procedural restraints on the operation of "ad-

visory committees."  An "advisory committee" cannot meet or take any ac-

tion until a detailed charter is filed with the head of the federal agency to

—4—

which it reports and with the congressional committees with legislative jurisdiction over the agency.  *Id.* § 9(c).  Further, agencies must "designate[] an officer or employee of the Federal Government to chair or attend each meeting of each advisory committee," and "[n]o advisory committee shall conduct any meeting in the absence of that officer or employee."  *Id.* § 10(e).

To ensure "that Congress and the public remain apprised of [advisory committees'] existence, activities, and cost," *id.* § 2(b), FACA further requires the disclosure of certain information about "advisory committees."  As a general matter, any meeting of an "advisory committee" must be held transparently, with opportunities for public participation:  There must be advance notice of the meeting in the Federal Register, *id.* § 10(a)(2), the meeting must be held open to the public (subject to certain exceptions), *id.* § 10(a)(1), (d), and "interested persons" must be allowed "to attend, appear[,] . . . or file statements," *id.* § 10(a)(3).  Similarly, subject to exemptions in the Freedom of Information Act ("FOIA"), certain records of an "advisory committee" must be disclosed:  The "advisory committee" must keep "detailed minutes of each meeting … and copies of all reports received, issued, or approved

by" it, *id.* § 10(c), and "reports, transcripts, minutes, appendixes, working

papers, drafts, studies, agenda" and "other documents which were made

available to or prepared for or by each advisory committee" must be made

available to the public, *id.* § 10(b).

Notably, FACA does not create a private right of action.  *See, e.g., Elec.*

*Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C.

2019).  Given this, plaintiffs alleging violations of FACA must seek judicial

review through alternative statutory means.  *See Idaho Wool Growers Assoc. v.*

*Schafer*, 637 F. Supp. 2d 868, 872–73 (D. Idaho 2009) (permitting FACA plain-

tiffs to seek review under the Administrative Procedure Act).

## II.    The Administrative Procedure Act

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, estab-

lishes a waiver of sovereign immunity and a cause of action for injunctive or

declaratory relief for parties "suffering legal wrong because of agency action,

or adversely affected or aggrieved by agency action within the meaning of a

relevant statute."  *Id.* § 702; *see also Heckler v. Chaney*, 470 U.S. 821, 828 (1985).

Pursuant to the APA, a party may challenge a "final agency action for which

there is no other adequate remedy in a court."  5 U.S.C. § 704.  After considering the record leading up to that final agency action, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[, or] … without observance of procedure required by law," *id.* § 706(2)(A), (D).

## FACTUAL BACKGROUND

### I.    The National Coal Council

### A.    The Council

The Council is a federal advisory committee that provides advice and recommendations to the Secretary of Energy on coal-policy matters.  *See* 49 Fed. Reg. 44,231–32 (Nov. 5, 1984).  Since first establishing the Council in 1984, the Secretary has renewed its federal charter several times, most recently in November 2019.  *See* 84 Fed. Reg. 65,144 (Nov. 26, 2019).  As presently constituted, the Council's mandate includes advising the Secretary on

"[f]ederal policy that affects, directly or indirectly, the production, market-ing[,] and use of coal," as well as "the technological, regulatory[,] and social impact of issues relating to coal production and use."  Ex. 1, at 1.  The Council has 110 members, all appointed by the Secretary for terms of up to two years, *see* The Nat'l Coal Council, *Membership Roster 2020* (last revised Sept. 25, 2020),      https://www.nationalcoalcouncil.org/Members/2020-Membership-Roster.pdf, and it is managed by the Department of Energy's ("DOE" or "the Department") Office of Fossil Energy through a designated federal officer, Assistant Secretary for Fossil Energy Steven Winberg, *see* Dep't of Energy, *NCC Executive Committee 2020* (visited Dec. 20, 2020), https://ncc.en-ergy.gov/ncc/executive-committee-2020.

Typically, the Council meets twice annually to deliberate, discuss, and vote on reports and recommendations to be made to the Secretary.  *See* Ex. 1, at 1.  Prior to each meeting, the Council publicizes its draft reports through the Federal Register and invites the public to participate in its deliberations in two ways:  by submitting written comments in advance of the meeting,

and by making oral comments at the meeting during a public-comment pe-

riod.   *See, e.g.,* Nat'l Coal Council, Notice of Open Meeting, 83 Fed.

Reg. 47,144 (Sept. 18, 2018).   After each meeting, the Council posts minutes

detailing the issues discussed, any public comments, and the Council's ulti-

mate recommendations to the Secretary.   *See* Dep't of Energy, *Past Meetings*

*and Events* (visited Dec. 20, 2020), https://ncc.energy.gov/ncc/past-meetings-

and-events.   The Council also maintains copies of its reports and studies on

its website.   *See* Dep't of Energy, *Studies of the National Coal Council* (visited

Dec. 20, 2020), https://ncc.energy.gov/ncc/studies-national-coal-council.

### B.    Council Subcommittees

In order to facilitate the efficient operation of the full advisory commit-

tee, the Council's chairperson may opt to form subcommittees, otherwise re-

ferred to as "study groups."   *See* Gen. Servs. Admin., *2019 Committee Detail:*

*National Coal Council* (visited Dec. 16, 2020), https://www.facada-

tabase.gov/FACA/FACAPublicCommittee?id=a10t000000Eq9aVAAR.    The

Council's subcommittees exist solely to "make recommendations to the par-

ent Council with respect to particular matters."   Ex. 1, at 2.   The Council's

charter provides that subcommittees "may not work independently of the chartered Council[,] … must report their recommendations and advice to the full Council for full deliberation and discussion[,] … and have no authority to make decisions on behalf of the chartered Council, nor can they report directly to the Department of Energy." *Id.* Thus, while their membership is subject to approval by the Department, the Council's subcommittees do not advise the Secretary or Department directly and are subordinate, in all respect, to the full Council.

## II.   The NCC, Inc.

In addition to the substantive work performed by its subcommittees, the Council receives administrative support on a no-cost basis from NCC, Inc. A distinct, non-governmental, non-profit organization, NCC, Inc. relies on voluntary contributions from its members and sponsors. The Nat'l Coal Council, *About the NCC* (visited Dec. 16, 2020) https://www.nationalcoal-council.org/page-About-Us.html. Incorporated under Virginia law, NCC, Inc. receives no government funding for its operations and is privately managed without government involvement. *See* Amended and Restated Articles

—10—

of Incorporation of the National Coal Council, Inc., Doc. 1-5, at 9–11 (herein-after, "Articles of Incorporation").

### III.    This Action

#### A.    Pre-Suit Correspondence

On May 27, 2020, Plaintiff, a Montana-based environmental organiza-tion, sent a letter to the Secretary of Energy, seeking in part to nominate a candidate for membership on the Council.  Wolgamott Letter, Doc. 1-2, at 3. Plaintiff also sought the production of three categories of information: (1) records associated with the full Council's meetings and reports; (2) infor-mation about the Council's subcommittees and their meetings; and (3) "any materials produced by [NCC, Inc.] and transmitted to some or all of [the Council's] membership.  *Id.* at 4.  Plaintiff further requested that the Secre-tary provide public notice of any meetings held by the Council or its sub-groups.  *Id.*

Initially, Defendants treated Plaintiff's records request as a request un-der FOIA, and a FOIA analyst responded to Plaintiff on July 15, 2020, re-questing additional information in order to process that request.  *See* Compl.

¶ 22.  Upon further review, however, Defendants determined that Plaintiff's request should be considered under FACA.

On September 9, 2020, the Council's Deputy Designated Federal Officer ("DDFO), Thomas Sarkus, notified Plaintiff of this determination, detailed Defendants' efforts to make available on a new website all Council documents subject to FACA, and clarified that prior versions of the Council's charter and membership-balance plans could be found in the GSA's FACA database.  *See* Sarkus Letter, Doc. 1-4, at 2–3.  The DDFO further noted that all of the Council's subcommittees report only to the Council—not to the Secretary or Department—and that therefore the subcommittee information Plaintiff sought was not subject to FACA's public-disclosure requirements. *See id*. at 2.  Finally, the DDFO reiterated Defendants' practice of placing Notices of Open Meetings in the Federal Register for all meetings of the full Council.  *Id*. at 3.

## B.    Plaintiff's Claims

Plaintiff did not respond to the DDFO's letter, instead filing this suit for declaratory and injunctive relief on October 15, 2020.  *See* Compl., Doc. 1.

The U.S. Attorney's Office for the District of Montana was served with the summons and complaint via certified mail on October 20, 2020. *See* Doc. 5-1, at 9. The complaint names as Defendants the Department of Energy and Secretary of Energy Dan Brouillette, in his official capacity. Compl. ¶¶ 9–10.

The complaint alleges two counts for FACA violations, all brought pursuant to the APA. *Id*. ¶¶ 82–90. Count One alleges that meetings of the Council, its subcommittees, and NCC, Inc. have not been properly noticed and opened to the public. *Id.* ¶¶ 82–85. Count Two alleges that the Council, its subcommittees, and NCC, Inc. have not disclosed all records required to be made public under FACA. *Id.* ¶¶ 86–90. Plaintiff seeks an order from this Court requiring Defendants to release records prepared for or by the Council, its subcommittees, and NCC, Inc. and to halt all Council activity until the Council, its subcommittees, and NCC, Inc. each comply with Plaintiff's demands. *Id.* ¶¶ 91–97.

# STANDARDS OF REVIEW

## I.    Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) asserts that a federal court lacks jurisdiction over the subject matter of the complaint.  Because federal courts are courts of limited jurisdiction and must presume that they lack jurisdiction over a given matter, the plaintiff bears the burden of pleading facts that, if true, would establish the court has subject-matter jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A Rule 12(b)(1) motion must be granted when, taken in their entirety, the allegations in the complaint are insufficient to invoke the court's jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

## II.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint.  *See Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).  To survive a Rule 12(b)(6) motion, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that satisfy this standard will be more than "merely consistent with a defendant's liability" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court accepts as true all well-pleaded facts in the complaint and considers any materials incorporated into the complaint by reference, as well as matters of which the court may take judicial notice. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Nevertheless, "conclusory allegations … and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019) (internal quotation marks omitted).

# ARGUMENT

Plaintiff has styled its complaint as asserting two claims: an open-meetings claim under § 10(a) of FACA, and an open-records claim under § 10(b).[1] But, in fact, Plaintiff seeks relief on each count as to three distinct entities—the full Council, the Council's subcommittees, and NCC, Inc.—that must be treated very differently under FACA. As explained below, this Court lacks jurisdiction to grant relief on either count as to the full Council, and Plaintiff's claims for relief as to both the Council's subcommittees and NCC, Inc. do not rise to the level of plausibility. Accordingly, Defendants ask this Court to dismiss the complaint in its entirety.

---

[1] In addition to its informational claims, Plaintiff devotes significant portions of the complaint to castigating the membership and substantive recommendations of the Council. *See, e.g.*, Compl. ¶ 5 (describing current Council membership as "lopsided"); *id.* ¶ 81 (stating that a change in the Council's "balance and vision" under the current presidential administration has led to recommendations inimical to Plaintiff's interests). To the extent these allegations might be read to state a claim that the Council is not "fairly balanced," as required by § 5(b)(2) of FACA, that claim would be non-justiciable. *See Ctr. for Policy Analysis on Trade & Health (CPATH) v. Off. of the U.S. Trade Rep.*, 540 F.3d 940, 945 (9th Cir. 2008) (concluding that FACA's fair-balancing provision presents "a political question that is best left to the other branches of government"); *see also W. Org. of Res. Councils v. Bernhardt*, 362 F. Supp. 3d 900, 911 (D. Mont. 2019) (same).

**I.     This Court Lacks Jurisdiction To Grant Relief as to the Full Council.**

Article III of the U.S. Constitution limits the jurisdiction of federal courts "to the adjudication of actual, ongoing cases or controversies." *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1166 (9th Cir. 2013). As "[o]ne of the controlling elements in the definition of a case or controversy under Article III," standing is a threshold requirement to invoke the power of a federal court. *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (opinion of Alito, J.) (internal quotation marks omitted). Standing is also necessary to sustain a court's authority over a given claim after the case is filed: If circumstances change, such that there is no longer any plaintiff in the case with standing to pursue the claim, then the "'live' controversy ceases to exist," and the claim becomes moot. *Logan*, 722 F.3d at 1166.

Standing has three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the pleadings stage, a plaintiff must "clearly allege facts demonstrating each element." *Id.*

—17—

(alterations and internal quotation marks omitted).  And because "standing

is not dispensed in gross," a plaintiff must satisfy all three elements of stand-

ing "for each claim [it] seeks to press and for each form of relief that is

sought."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017)

(quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

In this case, Plaintiff's theory of standing is premised on allegations

that it was injured by being denied access to certain meetings and records.

*See* Compl. ¶ 18.  Plaintiff alleges that "[a]n important component of [its]

mission is educating and informing its members about the ways in which

their interests are affected by federal policy on public lands and minerals."

*Id.* ¶ 13.  In pursuit of this mission, Plaintiff wrote to the Secretary and "re-

quested that Defendants open [Council] meetings to the public as required

by" § 10(a) of FACA.  *Id.* ¶ 21.  Plaintiff further asked the Secretary to "pro-

vide minutes of Council meetings, including records of how Council reports

and recommendations were drafted and approved."  *Id.* ¶ 19.  And though

the Department responded through the Council's DDFO by detailing its pol-

icy of providing advance notice of Council meetings in the Federal Register

and ensuring multiple avenues for public comment at those meetings, *see id*. ¶ 24; Sarkus Letter, Doc. 1-4, at 2–3, Plaintiff now claims that Defendants "impede[d] Plaintiff's access to information it is entitled to" under FACA. *Id.* ¶ 18.   According to the complaint, absent a court order requiring the Council's compliance with FACA, Plaintiff is "unable to adequately inform its members about the Council's deliberations and proposals … [or] meaningfully participate in Council processes and other agency actions." *Id.* ¶ 14.

The problem with these claims is that the complaint plainly shows that Defendants did not deny Plaintiff access to the Council's meetings or to the Council records it requested under FACA.

There is no question that the full Council is subject to FACA's provisions, and, as such, Defendants must ensure that committee meetings and covered records are open to the public. *See* 5 U.S.C. App. II § 8.   "[A] denial of access to information can, in certain circumstances, work an 'injury in fact' for standing purposes." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (internal quotation marks omitted).   But a plaintiff alleging such an informational injury under

—19—

FACA must show that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."[2] *Id.* (internal quotation marks omitted).

In *Public Citizen v. U.S. Department of Justice*, the Supreme Court held that an organization had standing to raise a FACA challenge where an advisory committee "refused [the organization's] request for" information. 491 U.S. 440, 449 (1989).  In reaching that conclusion, the Court looked carefully at another statute granting a right to information, FOIA, and noted that FOIA plaintiffs are required to show that "they *sought and were denied* specific

---

[2] To the extent Plaintiff also relies on more traditional injuries, such as the nuisances associated with coal extraction, *see, e.g.*, Compl. ¶¶ 15, 17, those injuries are unlike the harms Congress sought to address through FACA.  *See* 5 U.S.C. App II § 2(b) (declaring "the public should be kept informed with respect to the number, purpose, membership, activities, and cost of advisory committees").  Further, such injuries are unlikely to be remedied through a court order granting access to an advisory committee's meetings and historical records.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the [plaintiff's] injury will be redressed by a favorable decision." (internal quotation marks omitted)).

agency records" in order to establish standing.  *Id.*  (emphasis added).  The Court concluded that the same standing rule should apply for purposes of FACA:  A plaintiff must seek and be denied access guaranteed by the Act in order to have standing to sue.  *See id.* at 449–50.  This requirement ensures that plaintiffs do not "rais[e] only a generally available grievance about government" that is common to all citizens.  *Lujan*, 504 U.S. at 573.

On both counts of the complaint, Plaintiff's claims relating to Council meetings and records amount to no more than a "generally available grievance" because there is no allegation that Plaintiff has "specifically requested, and been refused" the information and access it seeks.  *Public Citizen*, 491 U.S. at 449.  Plaintiff wrote to the Secretary and "request[ed] that Defendants open [Council] meetings to the public as required by" § 10(a) of FACA and provide meeting minutes detailing how the Council arrived at its recommendations.  *See* Compl. ¶¶ 19, 21.  But the complaint contains no well-pleaded allegation that Defendants or the Council subsequently denied Plaintiff notice of or access to one of the Council's meetings, nor does it establish that the requested Council records remain undisclosed.

That is for good reason:  The public record does not support such an allegation.  Since 2017, the relevant time period established by the complaint, the Council has held nine full committee meetings.  Consistent with FACA's open-meeting requirements, DOE has encouraged public attendance and participation at each of these meetings, faithfully providing advance notice and directions for how to participate in the Federal Register.  *See* Nat'l Coal Council, Notice of Open Meeting, 85 Fed. Reg. 58,346 (Sept. 18, 2020); Nat'l Coal Council, Notice of Open Meeting, 85 Fed. Reg. 36,395 (June 16, 2020); Nat'l Coal Council, Notice of Open Meeting, 84 Fed. Reg. 15,610 (Apr. 16, 2019); Nat'l Coal Council, Notice of Open Meeting, 84 Fed. Reg. 10,053 (Mar. 19, 2019); Nat'l Coal Council, Notice of Open Meeting, 84 Fed. Reg. 39,827 (Aug. 12, 2019); Nat'l Coal Council, Notice of Open Meeting, 83 Fed. Reg. 12,180 (Mar. 20, 2018); Nat'l Coal Council, Notice of Open Meeting, 83 Fed. Reg. 47,144 (Sept. 18, 2018); Nat'l Coal Council, Notice of Open Meeting, 82 Fed. Reg. 42,663 (Sept. 11, 2017); Nat'l Coal Council, Notice of Open Meeting, 82 Fed. Reg. 15,345 (Mar. 28, 2017).

There is a similar story with respect to the Council records Plaintiff requested.  Plaintiff sought to have Defendants "provide[] the public with ready access to minutes of Council meetings, including records of how Council reports and recommendations were drafted and approved."  Wolgamott Letter, Doc. 1-2, at 4.  In response, the DDFO explained that the Department was in the process of providing public access to these materials through a new Council website.  *See* Sarkus Letter, Doc. 1-4, at 2–3.  And as Plaintiff acknowledges in the complaint, the DDFO was correct:  The Department "later posted Council minutes and agendas" on that website.[3]  Compl. ¶ 24.  The minutes and agendas posted to the Council's new website contain the information that Plaintiff sought to obtain.[4]  *See, e.g.*, Nat'l Coal Council,

---

[3] To pursue relief in federal court, a plaintiff must establish that a live dispute "exist[s] at all stages" of the case.  *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019).  Even if Plaintiff was denied access to Council records while the Department was creating a new website, the fact that the records Plaintiff sought are now available means that there is now no "'live' controversy" as to those records.  *Logan*, 722 F.3d at 1166.

[4] Plaintiff alleges "on information and belief" that NCC, Inc. has "frequently disseminated particular records (including reports on NCC, Inc. budgets and finances) at Council meetings since 2017," and further asserts that these materials have not been made public.  Compl. ¶ 71.  This bare

*Summary of Meeting* (May 15, 2019), https://ncc.energy.gov/ncc/sites/default/files/NCC-Events/2019/Summer/NCC%20Spring%202019%20Webcast%20Meeting%20Minutes.pdf (describing how report preparation "took over seven months" and "involved nearly 40 members of the [Council]").

Reviewing the complaint as a whole and taking account of those matters properly incorporated into the complaint, it is apparent that Defendants have not denied Plaintiff access to the meetings or records that it seeks from the Council. On the contrary, Defendants have satisfied Plaintiff's requests with respect to the Council, and so Plaintiff has suffered no injury that an order of this Court might remedy. Therefore, to the extent that the complaint

---

allegation, standing alone without factual support, is not the sort of "well-pleaded" allegation needed to establish that Plaintiff was denied access to information covered by FACA. *See In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true."); *see also Solis v. City of Fresno*, No. 1:11-CV-00053-AWI-GSA, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient … .").

seeks relief as to the full Council, this Court should dismiss Plaintiff's claims for lack of jurisdiction.

## II.    Plaintiff Fails To State a Claim as to the Council's Subcommittees.

In addition to seeking access to the meetings and records of the full Council, Plaintiff also demands that Defendants disclose information relating to any subcommittees of the Council and open any subcommittee meetings to the public.  Compl. ¶¶ 84, 88.  But the allegations in the complaint do not establish Plaintiff's legal entitlement to access the meetings and records of Council subcommittees.  This Court should therefore dismiss Plaintiff's claims as to the Council's subcommittees under Rule 12(b)(6).

As described above, FACA generally imposes broad disclosure requirements on advisory committees that fall within its scope.  Still, as the Supreme Court has recognized, these broad requirements are tempered by FACA's relatively narrow scope.  *Public Citizen*, 491 U.S. at 462 (stating that FACA was intended to have a "narrower formulation[]" than its language might otherwise suggest).

As important to this case, FACA's implementing regulations meaning-

fully limit its ambit, exempting subcommittee meetings and records from the

Act's requirements.  FACA directs the Administrator of the General Services

Administration ("GSA") to "prescribe administrative guidelines and man-

agement controls applicable to advisory committees."  5 U.S.C. App. II § 7(c).

Exercising this authority, GSA has made clear that, "[i]n general, the require-

ments of the Act … do not apply to subcommittees of advisory committees

that report to a parent advisory committee and not directly to a Federal of-

ficer or agency." 41 C.F.R. § 102-3.35(a); *see also W. Org. of Res. Councils v.*

*Bernhardt*, 412 F. Supp. 3d 1227, 1240 (D. Mont. 2019) (same).  Even certain

meetings of a full advisory committee, such as those held to conduct "pre-

paratory" or "administrative" work, are exempt from FACA's notice and

open-meeting requirements.  41 C.F.R. § 102-3.160.  In this way, FACA en-

sures public access at the critical stage of an advisory committee's work—

when the committee and the government come into contact—while still per-

mitting committees to efficiently perform the underlying work necessary to

generate their advice.  *See Nat'l Anti-Hunger Coal. v. Exec. Comm. of the President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C.), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983) (stating that "Congress did not contemplate that interested parties like the plaintiffs should have access to every paper through which recommendations are evolved, have a hearing at every step of the information-gathering and preliminary decision-making process, and interject themselves into the necessary underlying staff work so essential to the formulation of ultimate policy recommendations").

It is true, as Plaintiff points out, that FACA applies "[i]f a subcommittee makes recommendations directly to a Federal officer or agency, or if its recommendations will be adopted by the parent advisory committee without further deliberations by the parent advisory committee."  41 C.F.R. § 102-3.145; *see also* Compl. ¶ 37.  But only in this narrow circumstance—when a subcommittee stands in the place of the full committee as an advisor to the federal government—is a subcommittee subject to FACA's openness requirements.

—27—

These principles are fatal to Plaintiff's claims for relief as to the meetings and records of Council subcommittees. In support of its claims, Plaintiff baldly speculates that Council subcommittees directly advise the Secretary. *Cf.* Compl. ¶ 84 (stating simply that Council subcommittees "*appear*" to be "offering … recommendations directly to Defendants" (emphasis added)). And it asserts, without elaboration, that Council subcommittees "generate and recommend policies to Defendants without intermediate deliberation by the full Council." *Id*. ¶ 88. But in its entire complaint, Plaintiff never identifies any specific instance in which a recommendation was provided to the Secretary outside of the Council's established procedures, or where a recommendation was adopted without deliberation by the full Council. Instead, in the place of factual allegations, Plaintiff offers logical leaps. *See, e.g.*, *id.* ¶ 59. Such "unwarranted inferences" are not enough to state a plausible claim for relief. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d at 1149.

Notwithstanding Plaintiff's bare conclusions to the contrary, the well-pleaded allegations in the complaint, taken as true, do not establish that

FACA's open-meetings and open-records requirements apply to Council subcommittees.  Therefore, the complaint should be dismissed to the extent Plaintiff seeks to open the meetings and records of those subcommittees.

## III.   Plaintiff Fails To State a Claim as to NCC, Inc.

This leaves Plaintiff's claims that, under FACA, Defendants must ensure that NCC, Inc.'s meetings and records are open to the public.  But as with Plaintiff's subcommittee claims, the relief Plaintiff seeks is not required by FACA or supported by the allegations in the complaint.

Critically, Congress did not place within FACA's ambit every entity that might, in some form or fashion, "advise" the federal government.  By its text, FACA applies only to "advisory committees," which the Act defines as "any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof" that is, as relevant here, "*established or utilized* by the President" or "by one or more agencies" for the purpose "of obtaining advice or recommendations." 5 U.S.C. App. II § 3(2) (emphasis added).  The Supreme Court has interpreted this definition narrowly in order to avoid "extend[ing] FACA's requirements

to any group of two or more persons, or at least any formal organization, from which the President or an Executive agency seeks advice." *Public Citizen*, 491 U.S. at 452 (1989); *see also Manshardt v. Fed. Judicial Qualifications Comm.*, 408 F.3d 1154, 1157 (9th Cir. 2005). So interpreted, an advisory committee is considered to be "established" by an agency only if it was actually formed by the government. *See Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 905 (9th Cir. 1996). Similarly, an advisory committee is "utilized" by an agency only if it is "so closely tied to [the] agency as to be amenable to strict management by agency officials." *Id.* (quoting *Food Chem. News v. Young*, 900 F.2d 328, 333 (D.C. Cir. 1990)) (internal quotation marks omitted). And in exercising its authority to implement FACA, GSA has reinforced that "[a]ny committee or group created by non–Federal entities … [that is] not actually managed or controlled by the executive branch" is not subject to FACA's requirements. 41 C.F.R. § 102-3.40(d). Given these limiting provisions, Plaintiff is not entitled to the relief it seeks as to NCC, Inc. because NCC, Inc. is not a committee "established or utilized" by Defendants within the meaning of FACA.

Plaintiff's most detailed allegations focus on NCC, Inc.'s relationship to the Council, and Plaintiff attempts to portray that relationship as a nefarious one.  As alleged in the complaint, NCC, Inc.'s corporate purpose is stated in the same terms as the purpose in the Council's charter:  to advise, inform, and make recommendations to the Secretary of Energy on national coal policy.  *Compare* Compl. ¶ 54, *with* Articles of Incorporation, Doc. 1-5, at 8.  Even the organizations' memberships are the same:  Per its corporate documents, NCC, Inc.'s members are the same individuals who serve on the Council.[5]  *See* Compl. ¶ 55; Articles of Incorporation, Doc. 1-5, at 9.  And NCC, Inc. is privately funded through voluntary contributions by its members.  *See* Compl. ¶ 52; Articles of Incorporation, Doc. 1-5, at 10.  In light of these allegations, Plaintiff surmises that Defendants are engaged in a "shell

---

[5] Though the complaint describes NCC, Inc. as "co-chaired" by a government appointee, *see* Compl. ¶ 56, the Court need not credit this allegation. The Articles of Incorporation attached to the complaint make clear that this appointee has no role beyond the legally prescribed management of the full Council meetings that NCC, Inc. supports.  Articles of Incorporation, Doc. 1-5, at 13.  The Secretary's appointee is "not an officer of the corporation," *id.*, and plays no role in managing NCC, Inc., a task that is entrusted to the corporation's Executive Committee, *id.* at 10–11.

game," permitting NCC, Inc. to "support[] and direct[]" the Council's work so that the corporation's funders "may obtain pro-extraction recommendations" from the Council.[6]

The problem with this account, at least for purposes of FACA, is that it ignores the only relationship that counts under the Act: that between the agency and the alleged advisory committee. Even accepting the allegations of the complaint as true, Plaintiff has not established, as it must in order to

---

[6] Plaintiff also quotes certain characterizations of the relationship between NCC, Inc. and the Council from a recent FOIA case, *Niskanen Center, Inc. v. U.S. Department of Energy*, 328 F. Supp. 3d 1 (D.D.C. 2018). There, the Department withheld NCC, Inc.'s business information, which had been voluntarily provided to it with an expectation of confidentiality, under FOIA's exemption for "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The *Niskanen* court reasoned that NCC, Inc.'s documents were not "confidential" under FOIA: In the court's view, there was "no meaningful difference between the Council and NCC, Inc.," such that it made "little sense to conclude" that NCC, Inc. "voluntarily" provided information to the government. *Niskanen*, 328 F. Supp. 3d at 11–12. The court's FOIA analysis since has been superseded. *See Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356 (2019) (finding information "confidential" under FOIA when it is treated as private by the owner and provided to the government with assurance of privacy). And, in any event, Plaintiff's reliance on the *Niskanen* court's FOIA analysis in this FACA and APA action is misplaced.

make out its FACA-based claims, that NCC, Inc. is established or utilized by Defendants for the purpose of obtaining advice or recommendations.

As explained above, an advisory committee is "established" by an agency only when the government is responsible for its creation.  *See Aluminum Co.*, 92 F.3d at 905.  But NCC, Inc's articles of incorporation, attached to the complaint, make clear that the corporation was privately established without government involvement.

Likewise, there are no well-pleaded allegations that Defendants "utilize" NCC, Inc. in the manner and for the purposes contemplated by FACA. Even accepting all allegations as true, the complaint fails to demonstrate that NCC, Inc. operates subject to "strict management by agency officials."  *Id.* Instead, the corporation receives all of its funding from private sources, Compl. ¶ 52, and its internal corporate-management structure provides no role for government officials, Articles of Incorporation, Doc. 1-5 at 10–11. Moreover, the complaint does not appear to allege, even in a conclusory fashion, that NCC, Inc., as opposed to the Council, has ever provided advice or recommendations to Defendants.

The closest that Plaintiff comes to alleging a cognizable form of "utilization" is its assertion that "Defendants utilized and relied on NCC, Inc. to undertake many of their obligations under FACA."  Compl. ¶ 53; *see also id.* ¶ 69 (describing NCC, Inc. as "generally the keeper and publisher of Council materials").  But this alleged relationship—that, in effect, Defendants rely on NCC, Inc. to facilitate the Council's compliance with public-disclosure laws—is a far cry from the type of public-private relationship that would trigger FACA's provisions.  *Cf.* 5 U.S.C. App. II § 3(2) (defining a FACA-covered entity as one "utilized … in the interest of obtaining advice or recommendations").

However "deeply intertwined" NCC, Inc. is with the Council, Compl. ¶ 57, the complaint and its attached documents, as well as the public record, show that the corporation is differently situated in the only ways that matter: It was not established by Defendants and is not utilized by them for the purpose of obtaining advice or recommendations.  That alone warrants dismissal of Plaintiff's claims for relief under Rule 12(b)(6).

## CONCLUSION

For the reasons stated, Defendants respectfully ask this Court to dismiss the complaint:  The Court lacks jurisdiction over Plaintiff's claims regarding the Council, and Plaintiff otherwise fails to state a plausible claim for relief as to the Council's subcommittees and NCC, Inc.

Dated:  December 21, 2020            Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General

ELIZABETH J. SHAPIRO
Assistant Branch Director

*/s/ Cody T. Knapp*
CODY T. KNAPP
Trial Attorney
Federal Programs Branch, Civil Division
U.S. Department of Justice

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I certify that this brief contains 6,465

words.  I relied on the word count function in Microsoft Word, which was

used to prepare this document.

*/s/ Cody T. Knapp*
CODY T. KNAPP